IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER GROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 15-0325-WS-B |
| | ) | |
| STATEWIDE HEALTHCARE | ) | |
| SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the parties' Joint Motion to Approve Settlement Agreement Pursuant to the Fair Labor Standards Act (doc. 20).

**I.      Procedural History.**

Plaintiff, Jennifer Gross, brought this action against Statewide Healthcare Services, Inc. and Oxford Health Care Services, Inc., alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  According to the well-pleaded allegations of the Complaint, Gross worked for defendants from January 2012 until March 2015 as a Certified Nursing Assistant / Home Health Aid.  The Complaint alleges that Gross's job duties consisted in large part of performing general housework such as washing clothes, cooking meals, and running errands for patients and their families, with only 30-40% of her work time devoted to patient care, such that she was properly classified as nonexempt under the FLSA.  Gross pleads that defendants routinely required her to work in excess of 40 hours per week, but compensated her only at her straight-time rate of $8.25/hour, even for hours worked in excess of 40 in a given week.

Based on these factual allegations, Gross's Complaint claimed that defendants had violated the overtime pay requirements of the FLSA, and demanded unpaid overtime compensation, plus fees and costs.  (*See* doc. 1, at 5.)  For their part, defendants denied any FLSA liability to Gross based on their contention that she "performed FLSA-exempt work as a home care provider for the vast majority of her employment."  (Doc. 14, at 2.)  In so doing,

defendants appear to claim that Gross was exempt from the FLSA's overtime pay requirements pursuant to 29 U.S.C. § 213(a)(15).[1]

Despite their substantial legal and factual disputes, the parties, by and through their respective counsel of record, engaged in early settlement discussions informed by plaintiff's responses to court interrogatories (doc. 16) and defendants' Verified Summary of Plaintiff's Hours Worked and Wages for 2013-2015 (doc. 17).  The result of these discussions was that the parties, with the advice and counsel of their attorneys, have reached a compromise settlement of this dispute.  On that basis, and as required by applicable law, the parties now seek judicial approval of their proposed settlement.

II.     Analysis.

   A.     *Statutory Requirement of Judicial Approval of FLSA Settlements.*

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial oversight, scrutiny or approval.  However, FLSA settlements must be handled differently.  *See, e.g., Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.").  This is because "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).  "Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage."  *Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011).  The

---

[1]     That section creates an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  29 U.S.C. § 213(a)(15).  Department of Labor regulations define the term "companionship services" as meaning "the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself," but excludes "domestic services performed primarily for the benefit of other members of the household."  29 C.F.R. § 552.6(a), (c).  Defendants' legal position is potentially hampered by a new DOL regulation whose effective date was January 1, 2015 (two months before Gross's employment concluded), and which specifies that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act."  29 C.F.R. § 552.109.

mechanics of such a settlement are that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353.

Where, as here, a district court is asked to approve an FLSA settlement between private litigants, the court's responsibility is to ascertain whether the parties' negotiated resolution comports with the statute's terms. *See, e.g., Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) ("[t]he purposes of the FLSA are undermined whenever an employer is allowed to escape liability for violations of the statute"); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes"). A settlement may be approved upon confirmation that "employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp.2d at 1282. Thus, the touchstone of the inquiry is whether the proposed settlement "constitutes a fair and reasonable compromise of a *bona fide* FLSA dispute." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *3 (S.D. Ala. Feb. 14, 2013).

The caveat to such judicial oversight is that "[i]n reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Parker v. Chuck Stevens Chevrolet of Atmore, Inc.,* 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) (citations and internal quotation marks omitted); *see also Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable). Such deference is warranted because "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009).

### B.    *Fairness/Reasonableness of Settlement.*

The parties' filings reflect that this action does, indeed, involve a *bona fide* FLSA dispute as to whether Gross was entitled to FLSA overtime compensation. In particular, the parties appear to have good-faith factual and legal disagreements as to whether the nature of Gross's duties rendered her eligible for the FLSA companionship exemption or not. All information

before the Court at this time supports a determination that the validity of Gross's FLSA claim was actually, reasonably in dispute, thereby giving rise to the possibility of a *Lynn's Food* compromise of those disputed claims.

Against this backdrop of litigation uncertainty, the parties negotiated a settlement to resolve Gross's FLSA claim in its entirety.  The Settlement Agreement and General Release (doc. 20, Exh. A) confirms that defendant Statewide Healthcare Services, Inc. has agreed to pay Gross, and Gross has agreed to accept, the sum of $2,300 in unpaid wages and liquidated damages.  This sum appears to constitute all or substantially all of the premium pay that Gross claims she is owed.[2]  Additionally, defendants have agreed to make a separate settlement payment to plaintiff in the amount of $2,200 for attorney's fees and costs.

In conducting the mandatory *Lynn's Food* fairness review of the proposed settlement, the Court finds that numerous factors favor approval here.  First, by all appearances, there is a *bona fide* dispute between the parties as to whether Gross would be entitled to recover unpaid overtime compensation at all as to the vast majority of her hours worked in excess of 40 in a week.  Given the factual and legal uncertainty as to whether she was covered by the companionship exemption during her employment for defendants, the parties' announced settlement is a fair and reasonable compromise of a *bona fide* FLSA coverage dispute.  Second, the court file reflects that this settlement was the product of arm's-length, good-faith negotiations, with each side represented by counsel and exchanging information to facilitate the informed evaluation of settlement proposals.  Third, as noted, the backpay amount being paid to Gross would compensate her fully for all unpaid overtime wages that Statewide's records of hours worked show she would be entitled to receive if she were to prevail on her FLSA claim.  Fourth, while attorney's fee settlements in FLSA cases may be problematic for a *Lynn's Food*

---

[2]        In particular, Statewide's Verified Summary of Plaintiff's Hours Worked and Wages reflects that (i) Gross worked no hours in excess of 40 in any workweek in 2013; (ii) Gross worked a total of 534.75 hours in excess of 40 in particular workweeks in 2014; and (iii) Gross worked a total of 6 hours in excess of 40 in particular workweeks in 2015.  Thus, by defendants' records, the total number of hours for which Gross claims to have been underpaid (receiving only her $8.25/hr straight-time rate rather than her $12.38/hr overtime premium pay rate) is 540.75.  Multiplying that total number of overtime hours by the $4.13 overtime pay differential would yield a backpay sum of $2,233.30, or some $66.70 less than the agreed-upon settlement amount.

analysis where the attorney's fee payment adversely impacts the plaintiff's recovery, there is no indication and no reason to believe that such is the case here. Again, with plaintiff receiving 100 cents on the dollar for the overtime pay she would be owed under Statewide's hours-worked records if she prevailed at trial, it seems inconceivable that this amount could have been ratcheted downward to help fund the separate attorney's fee payment.

In short, and with due regard for the strong presumption in favor of finding FLSA settlements reasonable when negotiated by competent counsel in an adversary context, the Court concludes that the proposed settlement represents a fair deal to resolve and settle FLSA claims that are the subject of a *bona fide* controversy.

## III.     Conclusion.

For all the foregoing reasons, it is **ordered** that the parties' Joint Motion to Approve Settlement Agreement (doc. 20) is **granted**. The settlement of plaintiff's FLSA claim is **approved** as fair and reasonable pursuant to the analysis required by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). In accordance with the requirements of *Lynn's Food*, a stipulated final judgment will be entered.[3]

DONE and ORDERED this 10th day of May, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]     Accompanying the Joint Motion is a proposed "Order Granting Joint Motion for Approval Settlement and for Order of Partial Dismissal." (*See* doc. 20, at 6.) The Court declines to enter that proposed order for at least two reasons. First, the parties' request for an "Order of Partial Dismissal" is puzzling and appears inaccurate. The only claim interposed by Gross in this litigation is an FLSA cause of action; therefore, no claims would survive the compromise settlement of her FLSA theory of liability. There is simply nothing left of the case, so the dismissal cannot be "partial." Besides, the present request for "Order of Partial Dismissal" is irreconcilable with the parties' previous representation to the Court that they "have reached a settlement of all claims." (Doc. 18.) The Court therefore assumes that the reference to an "Order of Partial Dismissal" was erroneous and inadvertent, and that the parties are not requesting that any portion of the Complaint be left intact. Second, the proposed order would have this Court simply dismiss plaintiff's FLSA claims; however, the Eleventh Circuit has emphasized that settlement of FLSA claims under *Lynn's Food* must be effectuated via stipulated final judgment. *See, e.g., Nall*, 723 F.3d at 1308 ("The agreement between Nall and Malik was not made under the supervision of the Secretary of Labor, so ***it is valid only if the district court entered a 'stipulated judgment' approving it.***") (emphasis added).